DANIEL S. SMITH *et al.*

*v.*

KATHERINA SMITH *et al.*

*Opinion filed November 1, 1897.*

1. EVIDENCE—*what immaterial in suit contesting will for undue influence.* In a suit to set aside a will for undue influence by the wife, a contract between the testator and his wife, made several months before their marriage, concerning the terms of her employment by him as housekeeper, and containing nothing tending to show that the wife exercised undue influence in procuring the subsequent will, may be excluded.

2. WITNESSES—*husband of complainant in will contest not a competent witness.* Under section 2 of the Evidence act (Rev. Stat. 1874, p. 488,) the husband of one of the complainants in a bill to set aside a will is not a competent witness in her behalf.

3. SAME—*when executor may testify in will contest after resigning executorship.*  An executor called as a witness in a will contest, but withdrawn upon objection by the contestants, may testify at a later stage of the hearing, where, in the meantime, he procures his discharge as executor from the county court and retains no interest in the suit, as a party or otherwise.

4. PARTIES—*when court may dismiss suit as to executor.*  A suit to contest a will may be dismissed as to the executor, sued jointly with the sole devisee, where, after suit begun, the executor is duly discharged by the county court, and it appears that the only interest vested in him by the will was as executor of the personal estate, all of which would have passed to the sole devisee, under the statute, had there been no will.

5. APPEALS AND ERRORS—*harmless error in admission of evidence is not ground for reversal.*  The erroneous admission of evidence is not ground for reversal, where, upon consideration of the whole case, it is apparent that its admission could have worked no injury.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

This is a bill, filed on the 18th day of October, 1895, by the collateral heirs of one John Smith, deceased, for the purpose of contesting his will.  He died testate on April 9, 1894, leaving no children him surviving, but leaving a widow, named Katherina Smith.  His will was executed on March 19, 1894, and was admitted to probate in the county court of Sangamon county, where the testator lived and died on April 9, 1894.  The will is very short. By the first item, the testator directs his just debts and funeral expenses to be fully paid, and that his wife, Katherina Smith, shall have the widow's award according to law.  By the second item, he gives, devises and bequeaths all the rest, residue and remainder of his estate, both real and personal, of every kind and character, to his said wife absolutely and in fee simple.  By the third item, he nominates Dr. Henry Wohlgemuth of Springfield, Illinois, as executor of his will.  The defendants to the bill are the widow, Katherina Smith, Henry Wohlgemuth, executor of the will, and three tenants, occupying land belonging to the testator at the time of his death.

The bill charges, that John Smith, at the time of executing the paper purporting to be his will, was not of sound mind and memory, and that he was induced to make his said will through undue influence exercised over him by his said wife. The joint answer of Katherina Smith and Henry Wohlgemuth denies the truth of these charges in the bill. The case was tried before a jury, who found that the instrument in question was the will of the deceased testator. Motion for new trial was overruled, and a decree was entered in accordance with the verdict, finding the instrument to be the will of the deceased, and dismissing the bill for want of equity, and ordering complainants to pay the costs of the suit. The present appeal is prosecuted from the decree thus entered.

PALMER, SHUTT, DRENNAN & LESTER, for appellants.

PATTON, HAMILTON & PATTON, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Counsel for appellants in this case seek to reverse the decree of the court below, sustaining the will of the deceased testator, John Smith, upon three grounds:

*First*—It is claimed, that the court erred in refusing to allow the witness, George Doane, to testify on behalf of the complainants below, who are the appellants here. George Doane was the husband of Salome C. Doane, who was one of the collateral heirs of the deceased, and one of the complainants filing the bill. There was no error in the ruling thus made by the trial court. We have held in a number of cases, that, where any adverse party sues or defends in any of the different capacities specified in section 2 of chapter 51 of the Revised Statutes, entitled "Evidence," (2 Starr & Cur. Stat.—2d ed.—p. 1824), the husband and wife cannot testify for or against each other. Mrs. Smith defends as devisee. Mrs. Doane is one of the

contestants and a niece of John Smith, the testator.   As
Mrs. Doane is not a competent witness, her husband is
not a competent witness.   (*Treleaven* v. *Dixon*, 119 Ill. 548;
*Way* v. *Harriman*, 126 id. 132; *Bevelot* v. *Lestrade*, 153 id.
625; *Shovers* v. *Warrick*, 152 id. 355.)

*Second*—It is claimed by counsel for appellants, that
the trial court erred in refusing to admit in evidence a
certain contract, made between the deceased testator,
John Smith, and his wife, Katherina Smith, before their
marriage.   The making of the contract in question is
alleged to be one of a series of acts of undue influence,
exercised by Katherina Smith over her husband for the
purpose of obtaining from him the will, which gave her
all of his property.   Upon this ground it is contended,
that the introduction of the contract should have been
allowed.

The first wife of the deceased died in November, 1888.
At that time the testator was about seventy-five years
old.   Katherina Smith had lived in the family of the tes-
tator, as a servant, for about one year and a half com-
mencing in 1881.   She then left, and was gone three years,
and afterwards went back, and lived in the family about
two years and a half, and then again left in July, 1888.
She was then twenty-one years old.   On December 4,
1888, a contract was executed between the testator and
Katherina Stieler (the maiden name of Katherina Smith),
by the terms of which the said Katherina agreed to take
up her residence with said Smith and perform services
as housekeeper and cook for him, and to care for, attend
to, and, if necessary, nurse him, for three dollars per
week until the death of said Smith, and that her mother
and her young brother, a lad then about fifteen years old,
were to have the privilege of making their home at said
Smith's residence, while the said Katherina remained
there; and it was also therein agreed that, in addition
to said sum of three dollars per week to be paid for said
services, the said Katherina, in case she continued such

services up to the time of Smith's death, should be entitled to the further sum of $1500.00. After the execution of this contract, and on March 11, 1889, the said John Smith and Katherina Stieler were married. Thereafter they lived together as man and wife for five years, the said John Smith being eighty years of age at the time of his death on April 9, 1894.

The court permitted the jury to be informed of the fact, that there was a contract entered into between the testator and Katherina Smith, but refused to allow the terms of the contract to go to the jury, upon the ground that they were immaterial upon either of the issues made by the bill. We are unable to see how this contract is material. It was made several months before the parties to it were married, and was abrogated by the marriage itself. The question in this case is, whether there was an exercise of undue influence over the mind of the testator in the matter of making his will. The terms of the contract did not show, or tend to show, that Mrs. Smith exerted any undue influence over her husband at the time when he made his will. We are, therefore, of the opinion, that no error was committed in excluding the terms of the contract from the jury, especially in view of the fact that the evidence in the record clearly shows soundness of mind and memory and the absence of undue influence at the time when the will was made.

*Third*—It is next claimed on the part of the appellants that the court below erred in permitting Dr. Wohlgemuth to testify after his resignation in the county court as executor. In order to understand this objection, it will be necessary to state the facts out of which it arises. Early in the hearing of the cause Dr. Henry Wohlgemuth was presented as a witness on behalf of the proponents of the will. The contestants objected to him as an incompetent witness, on the ground that he was the executor of the will, and a party defendant. Before the court passed upon the objection thus made, the witness was withdrawn.

Thereupon Dr. Wohlgemuth went into the county court, and tendered his resignation as executor of the estate. At a later stage in the hearing, he was again offered as a witness, and an order of the county court, dated December 19, 1895, was offered in evidence. This order recites, that, on the day last named, the matter came on to be heard before the county court upon the resignation of Henry Wohlgemuth, executor, as aforesaid; and it appeared to the court, that Katherina Smith, sole devisee under the will of John Smith, had consented to the resignation of said executor; and the court thereupon ordered, that his resignation be accepted, and "that he make full settlement of his executorship with the court, and deliver over to his successor all money, chattels and effects of said estate in his hands." Henry Wohlgemuth then moved the court for leave to withdraw his answer, and that the bill be dismissed as to him. To this the contestants objected, but the court allowed the motion, and the contestants excepted. The witness was then permitted to testify over the objection of the contestants. The contestants requested, that the cause might be allowed to stand over until the county court should appoint an administrator *de bonis non*, or other proper successor, who should be made a party defendant to the bill in the place of Dr. Wohlgemuth. The court, however, refused to delay the hearing of the cause, until such successor should be appointed.

Section 2 of chapter 51 above referred to provides, that "no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends * * * as the executor, administrator, heir, legatee, or devisee of any deceased person, * * * unless when called as a witness by such adverse party so suing or defending, and also except" in certain cases. The excepted cases have no ap-

plication here.    Undoubtedly, under this section of the
act in regard to evidence, Dr. Wohlgemuth was not a
competent witness, so long as he was a party defendant
to the suit, because the adverse parties were the heirs    .
of the deceased, John Smith.    The question then arises,
whether, by reason of his resignation as executor in the
county court in the manner and under the circumstances
above narrated, he became a competent witness.-

Section 40 of chapter 3 of the Revised Statutes in re-
gard to administration is as follows: "An executor or
administrator may, upon his petition and upon giving
such notice to the legatees, devisees or distributees, as
the court shall direct, be allowed to resign his trust when
it appears to the county court to be proper; and upon
such resignation the court shall grant letters of admin-
istration, with the will annexed, or *de bonis non*, to some
suitable person, to administer the goods and estate not
already administered.    But no administrator or executor
shall be discharged till he shall have made full settle-
ment with the court and complied with its orders, and
shall deliver over to his successor all money, chattels and
effects of the estate in his hands not paid over according
to the orders of the court."    (1 Starr & Cur.—2d ed.—
p. 285).    In the case at bar, the county court appointed
no successor to Dr. Wohlgemuth upon his resignation;
and the order of the county court, accepting his resigna-
tion, directs, that he make settlement of his executorship,
and deliver over the effects to his successor; from which
it would appear, that, at the time he was admitted as a
witness to testify, he had not made a settlement of his
accounts with the county court.

Section 40, however, does give the county court the
power to allow an executor to resign his trust, when it
appears to that court to be proper.    Here, the county
court did allow Dr. Wohlgemuth to resign his executor-
ship, and entered an order accepting such resignation.
It is to be presumed, that the county court did its duty,

and acted upon proper considerations when it accepted such resignation; especially as Mrs. Smith, the sole devisee under the will, consented to such resignation. Upon the presentation of the order of the county court, accepting such resignation, to the circuit court, before whom the proceeding to contest the will was pending, the latter court was justified in dismissing the suit as to Dr. Wohlgemuth. The matter of the subsequent accounting was a matter to be disposed of by the county court. Upon the dismissal of the suit as to him, the former executor was no longer a party, and was a competent witness, provided he was not directly interested in the event of the suit after he ceased to be a party.

The question then arises, whether Dr. Wohlgemuth, after the dismissal of the suit as to him, had so far an interest in the event thereof, as to disqualify him from testifying. If Dr. Wohlgemuth would have been liable for costs in the event of a decree setting aside the will while he was a party to the suit, he could not be so liable after he ceased to be a party. The question, whether a witness has, or has not, a disqualifying interest, in such a case as this, is to be determined by ascertaining, whether he would gain or lose by a decree setting aside the will. (*Campbell* v. *Campbell*, 130 Ill. 466). It is evident, that, so far as the question of costs is concerned, Dr. Wohlgemuth had no such interest in the case after he was dismissed out of it, as would be affected by a decree setting aside the will.

So far as his commissions, or compensation, as executor are concerned, his interest would not be affected by the result of the proceeding contesting the will. Section 133 of the act in regard to the administration of estates provides, that "executors and administrators shall be allowed as compensation for their services a sum not exceeding six percentum on the amount of personal estate, * * * with such additional allowances for costs and charges in collecting and defending the claims of the

estate and disposing of the same, as shall be reasonable."
(1 Starr & Cur. p. 348). Even though, in a collateral pro-
ceeding to set aside the probate of a will under section 7
of the act in regard to wills, a decree is rendered setting
aside the probate, and the proceedings thereunder, yet
such decree does not render all steps, taken in the ad-
ministration of the estate prior thereto, absolutely void.
Section 29 of the chapter in regard to administration
provides, that, in all cases where a will shall have been
proved and letters granted thereon, and such will shall
thereafter be set aside by due course of law, the letters
granted thereon shall be revoked. (1 Starr & Curtis,—
2d ed.—p. 282). If, therefore, the result of the present
suit had been a decree setting the will aside, the letters
testamentary originally issued to Dr. Wohlgemuth would
have been thereby revoked. But the general rule seems
to be, that the acts of an executor after probate are valid,
notwithstanding the subsequent setting aside of the pro-
bate. Sales made by the executor, or payments made to
him, will be sustained, although the probate is afterwards
set aside. (*Jones* v. *Jones*, 14 B. Mon. 464; *Woods* v. *Nelson*,
9 id. 600; 1 Williams on Executors,—R. & T. ed.—721).
This being so, there is no reason why, if such sales and
payments have been proper and right, the acting execu-
tor should not receive such compensation as the statute
allows, even though his letters testamentary are subse-
quently revoked by the setting aside of the will. The
probate of the will in the county court is *prima facie* valid,
until it is set aside. (*Purdy* v. *Hull*, 134 Ill. 298; *Buchanan*
v. *McLennan*, 105 id. 56; *Graybeal* v. *Gardner*, 146 id. 337). If
the grant of letters testamentary is to be looked upon
as an absolutely void act upon a subsequent setting aside
of the will by a judicial proceeding, then all the acts of
an executor done between such grant and its revocation
might be regarded as void; and in such case the executor
would not be entitled to his compensation. But the better
doctrine seems to be that the grant is not void, but only

voidable.   We have held, where letters of administration
have been granted in ignorance of the fact that there was
a will, and afterwards, upon a discovery of the will, it was
probated and recorded, and the letters of administration
were revoked, and letters with the will annexed were
granted to another person, that, in such case, the grant
of the first letters was not void, but voidable, and that
the acts performed by the first administrator are binding
in a collateral proceeding.   (*Shephard* v. *Rhodes*, 60 Ill. 301).
In *Meek* v. *Allison*, 67 Ill. 46, where the will of a deceased
person when offered for probate was rejected, and, no ap-
peal being taken, the county court upon a proper appli-
cation granted letters of administration upon the estate,
under which the administrator paid off claims and made
a partial distribution to the heirs, after which the will
was again presented and, after protracted litigation, was
probated, it was held that the letters of administration
were not void, but only voidable, and that, not being void,
they were a protection to the administrator for all law-
ful acts done by him under them before their revocation.
In *Rebhan* v. *Mueller*, 114 Ill. 343, we said (p. 347): "If a will
is not produced and letters of administration issue, acts
done and rights accrued under such administration will be
entitled to protection, so that no serious consequences
can follow from the delay in probating a will."   There is
no reason why the same principle, which thus applies to
a case where letters of administration are revoked upon
subsequent admission of a will to probate, should not also
apply to a case where an executor has acted in good faith
under a will which is afterwards set aside.   His proceed-
ings thereunder are voidable and not void.   In view of
these considerations it cannot be said, that Dr. Wohlge-
muth, upon his final accounting in the county court, would
not be entitled to his legitimate and proper compensation,
whether the proceeding to contest the will resulted in a
decree sustaining the will, or in a decree setting it aside.
He, therefore, had no special interest in testifying for

the purpose of sustaining the will in order to obtain his compensation.

In the present case, if there had been no will, the devisee, Mrs. Smith, would have inherited from her deceased husband one-half part of all his real estate, together with dower in the other half, and the whole of his personal property. Here the executor had nothing to do with the real estate. He was not made a trustee under the will, nor vested with any power to sell, or dispose of the real estate. As executor he merely took the personal estate, all of which, after the payment of debts, would belong to Mrs. Smith, whether there was a will or not. In any view of the matter presented to us in the arguments of counsel, we are unable to see that Dr. Wohlgemuth had any such interest, after the suit was dismissed as to him, as would disqualify him as a witness from testifying.

The case of *Campbell* v. *Campbell*, 130 Ill. 466, has been referred to by counsel. In that case, one Dr. Enos had been appointed executor under the will, but, on the probate thereof, he refused to act in that capacity, and filed his disclaimer, setting forth that he had no interest in the matter in controversy; he filed his motion to have the bill dismissed as to him, and the motion was allowed; it was said there, that, "if Enos had qualified as executor, he would have been a necessary party to the bill." There, however, it appeared, that Enos was not only appointed executor by the will, but was also appointed trustee in respect to some of the land devised, and given large discretionary powers in respect to the application of the proceeds of the estate devised to him in trust. Being trustee of the lands, he took the legal title thereto under the will. It follows, of course, that, if he had qualified as executor, he would have been a necessary party; but no such case, as that of a trustee of land by appointment under the will, exists here.

It is a general rule, that, "wherever the personal assets of the deceased may be affected by the decree, or wherever the statements of the bill show, that the relief prayed for cannot be granted without an administration of the estate, the personal representative is a necessary party." (7 Am. & Eng. Ency. of Law, p. 402.) The bill in this case is peculiar in its allegations. Although setting up the facts, that John Smith made a will, and left all his property to his widow, and that such will was admitted to probate, and Henry Wohlgemuth became executor thereof, and although further alleging unsoundness of the testator's mind and the exercise over him of undue influence at the time of the making of the will, yet the bill does not specifically pray that the will be set aside. Such relief as the setting aside of the will could only be granted under the general prayer "for such other and further relief as shall seem meet according to equity and good conscience." The bill is in fact a bill for partition, setting up that the heirs, who are the complainants, own certain undivided interests in the land owned by the deceased at his death. It does not allege, that the widow has, or would have, any interest in such land as heir, if the will should be set aside. On the contrary, it charges that the widow is an alien, and was an alien at the time of the testator's death, and that, as such, she is incapable of taking any part of said real estate as heir. This contention as to the alienage of the widow seems to have been abandoned by the contestants upon the hearing. Reference is thus made to the allegations of the bill, for the purpose of showing that the personal assets of the deceased cannot be affected by any decree rendered. It is also manifest, that there are no statements in the bill, showing that an administration of the estate was necessary before the relief prayed for could be granted. It might be that, if the personal assets turned out to be insufficient to pay the debts, the executor would be required

to resort to the real estate; but the bill contains no allegations to the effect, that such insufficiency of assets exists.

It must be said, however, that, while the executor was not a necessary party to the bill, he was a proper party. It is the correct practice, in a proceeding to contest a will, to make the executor a party. He represents the will. The old English authorities hold, that, without an executor, there can be no will, although the doctrine now is, that the appointment of an executor is not an essential of a will. (Williams on Executors, (R. & T. ed.) p. 6, and notes.) It is true, that the real parties in interest in defending the will are the legatees and devisees thereunder, yet, as the executor is the representative of the estate, he should be made a party. It is said by counsel that, after giving his testimony in this case, Dr. Wohlgemuth might have gone into the county court, and withdrawn his resignation, and have been re-appointed as executor of the will after the decree of the circuit court sustaining it. This is true, and furnishes another reason why the course here pursued of accomplishing a resignation, while the proceeding to contest the will is on hearing, is to be deprecated and condemned. At the same time, as Mrs. Smith, the sole devisee in the will, was a party defendant, the dismissal of the suit as to Dr. Wohlgemuth, made no material difference in view of the character and convincing nature of the testimony introduced.

Even if it were true, that the testimony of Dr. Wohlgemuth was incompetent under the circumstances here detailed, the admission of his testimony could not possibly have injured the contestants, and, therefore, they have no right to complain of the error in admitting the same, if there was error. The proponents introduced twenty witnesses, whose testimony is clear and convincing, that, at the time of the making of his will, the testator was of sound mind and memory, and free from the domination of any undue or improper influence. Three

of these witnesses were the subscribing witnesses to the will. Of these subscribing witnesses, two were tenants upon the farm of the deceased, who had helped to nurse him during his last sickness, and the other was the lawyer who drew the will. The testimony of these three witnesses fully establishes the soundness of the testator's mind and memory, and his ability to make the will. The contestants introduced nine witnesses for the purpose of showing, that the testator was not of sufficiently sound mind and memory to make his will; but we do not think that their testimony is very convincing upon this subject. It follows that, even though the testimony of Dr. Wohlgemuth were excluded, the remaining testimony in favor of the validity of the will is so convincing, that the verdict of the jury could not have been otherwise than it was. Where, upon consideration of the whole case, it is apparent that the giving of an instruction, or the admission of testimony, can have worked no injury, the giving of such instruction, or the admission of such testimony, even though erroneous, will constitute no ground for a reversal of the decree. (*Gray* v. *Merriam*, 148 Ill. 179; *Greene* v. *Greene*, 145 id. 264.)

Our conclusion, therefore, is that the decree of the circuit court was correct. It is, accordingly, affirmed.

*Decree affirmed.*